```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
TAJA GONSALVES,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 17-346 WES
                                   )
STATE OF RHODE ISLAND, STATE       )
POLICE DEPARTMENT, CAPITOL         )
POLICE DEPARTMENT, NEIL LAIRD,     )
alias, ROBERT TELLA, alias,        )
ROBERT PACHECO, alias, each        )
individually and in their          )
official capacities as police      )
officers in the Rhode Island       )
Capitol Police, ROBERT MARCHAND,   )
alias, individually and in his     )
official capacity as an officer    )
in the Rhode Island State          )
Police, ANN ASSUMPICO, alias,      )
in her capacity as the             )
Commissioner of the Rhode          )
Island Department of Public        )
Safety and the Superintendent      )
of the Rhode Island State          )
Police, JOSEPH T. LITTLE,          )
alias, individually and in his     )
capacity as the Chief of the       )
Rhode Island Capitol Police,       )
                                   )
        Defendants.                )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendants Robert Pacheco's and Joseph T. Little's, in their Individual and Official Capacities, Motion To Dismiss ("Motion"). (ECF No. 18.) Defendants move to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure. (Id.) For the reasons set forth below, the Court DENIES the Motion with respect to Pacheco and GRANTS without prejudice the Motion with respect to Little.

I. Background

On July 29, 2016, Plaintiff Taja Gonsalves went to the Providence Regional Family Center ("Center") for an appointment with an employee of the Department of Human Services ("DHS") regarding benefits for herself and her three children. (Compl. ¶¶ 10-11, 19, ECF. No. 1.) Rhode Island Capitol Police are assigned to the Center to carry out duties such as locking and unlocking the main entrance, staffing the metal detector, and monitoring the building's occupancy as per the State Fire Marshall. (Id. ¶¶ 14-15.) On this day, Defendants Neil Laird, Robert Tella, and Robert Pacheco, all members of the Rhode Island Capitol Police, were posted to the Center. (Id. ¶ 18.) Defendant Little is the Chief of the Capitol Police. (Id. ¶ 6.)

When Plaintiff arrived at the Center, the front doors were locked. (Id. ¶ 21.) Laird opened the door and informed Plaintiff that no one could enter the building because it was over capacity and would be shut down by the Fire Marshall. (Id. ¶ 24.) Plaintiff informed Laird that she had an appointment with DHS and asked if he could inform DHS staff that she had arrived for her appointment. (Id. ¶ 25.) Laird refused. (Id. ¶ 26.) In additional interactions with Laird when Plaintiff attempted to enter the building, Laird

2

similarly informed Plaintiff that she would be denied entry. (Id. ¶¶ 31–33, 36–41.)

When Plaintiff entered the Center after the front doors were unlocked, Laird was standing near the metal detector, Pacheco was in the area near the metal detector, and Tella was on break in the back of the Center. (Id. ¶¶ 46, 49–52.) As Plaintiff approached the metal detector, Laird informed her that she would be arrested. (Id. ¶¶ 53–54.) Then, Pacheco radioed Tella and told him to come to the front. (Id. ¶ 54.) Once Tella came out of the back office, Plaintiff alleges that Laird and Tella used excessive force when they arrested her. (Id. ¶¶ 58–69.)

Describing her arrest, Plaintiff alleges that Laird grabbed her right arm and twisted it sharply behind her back, which caused her severe pain and an audible popping sound from her shoulder. (Id. ¶ 59.) Plaintiff alleges that she screamed out in pain and said that she was not resisting arrest, which was followed by Laird slamming her face and chest into the desk adjacent to the metal detector. (Id. ¶¶ 60–61.) Plaintiff further avers that Laird and Tella forced handcuffs onto her left wrist, over a brace she had been wearing for medical treatment, pulled both of her arms behind her back, and tightened the handcuffs so excessively that her fingers turned blue. (Id. ¶¶ 62–63.) After being handcuffed, Plaintiff asserts that Laird and Tella pushed and shoved her through the reception area and waiting room of the Center, with

3

her arms pulled up at an angle that caused her pain, which was exacerbated by the height difference between her and Laird. (Id. ¶¶ 64-66.) During this pushing and shoving, Plaintiff alleges that Laird or Tella, or both, squeezed her upper left arm with enough force to break the birth control device implanted therein, and that Laird and Tella pushed her hard enough to cause her to fall to the floor. (Id. ¶¶ 67-68.) Ultimately, Laird and Tella brought Plaintiff to a small room at the back of the Center, where Plaintiff claims that Laird pushed her into a chair.[1] (Id. ¶ 69.)

Plaintiff has since asserted claims through 42 U.S.C § 1983 for retaliatory arrest in violation of the First Amendment, false arrest and false imprisonment in violation of the Fourth Amendment, and excessive force and malicious prosecution in violation of the Fourth and Fourteenth Amendments.[2] Relevant to this particular motion are the claims brought through § 1983 for Fourth and Fourteenth Amendment violations for excessive force brought against Pacheco, and First and Fourth Amendment violations brought against Little.

---

[1] Plaintiff's further factual averments that pertain to her remaining time at the Center; her transportation to, time at, and release from the Lincoln barracks; and the subsequent dismissal of the charges against her, are not relevant to the motion at hand. (See Compl. ¶¶ 70-90.)

[2] Plaintiff also brings similar claims arising under the Rhode Island constitution and the common law.

4

II. Legal Standard

While deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom in the pleader's favor." García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012)). "[H]er claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" Id. at 102-03 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In other words, "the claim must be 'plausible on its face.'" Id. at 103 (quoting Iqbal, 556 U.S. at 678). In determining plausibility, "the reviewing court [must] draw on its judicial experience and common sense." Id. (alteration in original) (quoting Iqbal, 556 U.S. at 679). Additionally, "the complaint must be read as a whole." Id. (citing A.G. v. Elsevier, Inc., 732 F.3d 77, 78-79 (1st Cir. 2013)). Moreover, the "plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case." Id. at 104-05 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

III. Discussion

A. Pacheco

Defendants argue that the allegations in the Complaint are too tenuous and insufficient to support excessive-force claims

5

against Pacheco because of his mere bystander presence. (Defs. Robert Pacheco's and Joseph T. Little's Mem. in Supp. of Mot. To Dismiss ("Defs.' Memo") 6–7, ECF No. 18.) However, while Plaintiff's allegations against Pacheco are slight, when viewed in context of the alleged events as a whole, Plaintiff's allegations suffice at the motion-to-dismiss stage. (See Compl. ¶¶ 4, 18, 51, 55.)

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990). However, "[h]is mere presence at the scene, without more, does not . . . render him legally responsible . . . for the actions of a fellow officer." Calvi v. Knox Cty., 470 F.3d 422, 428 (1st Cir. 2006) (citing Gaudreault, 923 F.2d at 207 n.3). Similarly, a "police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack." Gaudreault, 923 F.2d at 207 n.3. (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11–12 (2d Cir. 1988)). Although, "[a] constitutional duty to intervene may . . . arise if onlooker officers are instrumental in assisting the actual attacker to place the victim in a vulnerable position." Martinez v. Colon, 54 F.3d 980, 985 n.4 (1st Cir. 1995).

Reading the Complaint as a whole, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff's excessive force claim against Pacheco, based on his presence as a bystander who failed to intervene, is plausible on its face. See García-Catalán, 734 F.3d at 102–03. Initially, it can be inferred that Pacheco was present at the scene of Plaintiff's arrest because Plaintiff alleges that he was "in the area near the metal detector and the desk when Plaintiff entered the [Center]," which is the location that Laird and Tella arrested Plaintiff. (Compl. ¶¶ 51, 58–69.) While his "mere presence" is itself insufficient to impose liability, Pacheco's proactive radioing of Tella to come to the front to assist in Laird's arrest of Plaintiff supports the inference that Pacheco was "instrumental in assisting the actual attacker to place the victim in a vulnerable position." See Martinez, 54 F.3d at 985 n.4; (Compl. ¶ 55).

Moreover, the alleged period over which Laird and Tella used excessive force, coupled with Pacheco's presence in the Center's entrance area where the force was used, suggests that Pacheco had a "realistic opportunity to prevent [the] attack." See Gaudreault, 923 F.2d at 207 n.3 (internal quotations omitted); (Compl. ¶¶ 51, 55, 58–69); see also Ledea v. Metro-Dade Cty. Police Dep't, 681 F. App'x 728, 729–30 (11th Cir. 2017) (affirming denial of motion to dismiss because facts alleged bystander officers witnessed the beating, were in positions to intervene, and acted with

7

indifference during the few minute beating); Detris v. Coats, 523 F. App'x 612, 616–17 (11th Cir. 2013) (reversing grant of motion dismiss because facts alleged bystander officers were in a position to intervene as they stood by and watched beating even after victim was pinned to the floor and begging for help). Finally, discovery could "fill in the holes" of Plaintiff's claim against Pacheco, thus further elevating her claim's plausibility. See García-Catalán, 734 F.3d at 104—05.

In sum, the factual allegations against Pacheco, considered in the context of the entire Complaint, and drawing all reasonable inferences in the light most favorable to Plaintiff, suggest a plausible claim for failure to intervene under § 1983 against Pacheco. Accordingly, the Motion with respect to Pacheco is DENIED.

B. Little

Defendants argue that Plaintiff fails to allege that Little took any affirmative action, was a direct participant in or in a supervisory role for any supposed misconduct, and that Little is not personally liable for acts of individual employees. (Defs.' Memo 5–6.) Defendants note that the Complaint does not allow for ascertaining which claims Plaintiff lodges against Little; Plaintiff, however, argues that Little is liable as a supervisor under § 1983 for failing to train Defendants Laird, Tella, and Pacheco to properly facilitate interactions between benefits users

and the DHS. (Id. at 5; Pl.'s Mem. in Supp. of Her Obj. to the Mot. To Dismiss ("Pl.'s Memo") 7–9, ECF No. 19.)) Plaintiff, though, fails to adequately plead such a claim.

"It is by now axiomatic that the doctrine of respondeat superior does not apply to claims under section 1983." Gaudreault, 923 F.2d at 209 (citing Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir. 1985)). "[I]nadequate training of a police officer cannot be a basis for . . . liability under section 1983 unless a constitutional injury has been inflicted by the officer or officers whose training was allegedly inferior." Calvi, 470 F.3d at 429 (citing Young v. City of Prov. ex rel. Napolitano, 404 F.3d 4, 25–26 (1st Cir. 2005)). "Supervisors . . . can be held liable only on the basis of their own acts or omissions, amounting at the least to 'reckless' or 'callous' indifference to the constitutional rights of others." Id. (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989)). "Mere negligence will not suffice . . . ." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 515 (1st Cir. 2016).

Moreover, "[i]f a plaintiff relies on a theory of deliberate indifference," the plaintiff must demonstrate "(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists." Id. (internal quotations omitted). Causation is also an "essential element," which requires "proof that the supervisor's

9

conduct led inexorably to the constitutional violation." Id. (quoting Hegarty v. Somerset Cty., 53 F.3d 1367, 1380 (1st Cir. 1995)). The causation element is a difficult, but not impossible bar to meet, which can be proved by "showing inaction in the face of a 'known history of widespread abuse sufficient to alert a supervisor to ongoing violations'"; yet "'isolated instances of unconstitutional activity' will not suffice." Id. (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994)).

Little is mentioned specifically in only one paragraph of the Complaint, which states: "Defendant Joseph T. Little, alias, is sued individually and in his official capacity as the Chief of the Rhode Island Capitol Police." (Compl. ¶ 6.) Little is also mentioned in Plaintiff's prayer for relief, where Plaintiff prays for preliminary and permanent injunctions directing Little to "properly select, train, instruct, supervise and/or discipline officers" by enacting procedures that allow DHS clients to inform DHS staff of their arrival when the building is closed due to capacity. (Id. at 16.) Additionally, Plaintiff prays for injunctive relief directing Little to train Capitol Police officers stationed at the DHS so that the officers "exhibit adequate skills in customer service, constitutional rights, sensitivity, and cultural competence, with all curriculum approved by Plaintiff." (Id.)

Even though the plausibility threshold to survive a motion to dismiss is low, Plaintiff's allegations hardly rise to the suggestion of a "sheer possibility" that Little acted unlawfully. See García-Catalán, 734 F.3d at 102-03. The Complaint's factual allegations do not support Plaintiff's argument that Little was "deliberately indifferent" because the Complaint is devoid of any suggestion that Little had any knowledge of facts that a "substantial risk of harm" existed. See Guadalupe-Báez, 819 F.3d at 515; (Pl.'s Memo 8-9).

Moreover, the allegations insufficiently support the causation requirement, as the allegations present nothing more than an "isolated instance" of police misconduct. See Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1158-61 (9th Cir. 2013) (affirming dismissal of failure-to-train claim because the one alleged instance of misconduct was insufficient to show a pattern, not so obviously unconstitutional in the absence of a pattern, and so clearly criminal that its absence from the police training manual could not support the claim); cf. Guadalupe-Báez, 819 F.3d at 515-16 (reversing dismissal of claim against police department's superintendent because police-misconduct allegations were analogous to misconduct detailed in Department of Justice report made a year before alleged misconduct); Battiste v. Sheriff of Broward Cty., 261 F. App'x 199, 201-03 (11th Cir. 2008) (holding allegation that a report, made before defendant police chief took

position, detailing widespread police misconduct, could support a failure-to-train claim).

In sum, the factual allegations do not suggest a plausible claim for failure to train. See, e.g., Detris, 523 F. App'x at 615 (affirming dismissal of supervisor-liability claim against police chief because allegations lacked facts beyond reciting elements of the cause of action). However, because discovery could turn up facts sufficient to allege a plausible claim against Defendant Little, the motion is granted without prejudice to allow Plaintiff an opportunity to amend her complaint.

III. Conclusion

For the reasons discussed above, the Motion To Dismiss (ECF No. 18) is DENIED with respect to Defendant Pacheco and GRANTED without prejudice with respect to Defendant Little.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
Chief Judge
Date: December 12, 2017